# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**
## NO. 02-14-00085-CV


IN THE INTEREST OF A.D., A
CHILD

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
TRIAL COURT NO. D2013045

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In this accelerated appeal, appellant B.D. (Mother) challenges the trial court's order, entered after a bench trial, terminating her parental rights to her minor child, A.D. On appeal, Mother argues that the evidence was legally and factually insufficient to support termination of her parental rights under Family Code §§ 161.001(1)(D), (E), (O), or (P). *See* Tex. Fam. Code Ann.

---

[1]*See* Tex. R. App. P. 47.4.

§§ 161.001(1)(D), (E), (O), (P) (West 2014). Mother also argues that the evidence was legally and factually insufficient to support the trial court's finding that termination of her parental rights was in A.D.'s best interest. See Tex. Fam. Code Ann. § 161.001(2). The Department of Family and Protective Services (the Department) initiated these proceedings after having removed A.D. from Mother's custody in accordance with the emergency-removal proceedings outlined in Texas Family Code chapter 262. See Tex. Fam. Code Ann. § 262.104 (West 2014). We will affirm.

## II. STANDARDS OF REVIEW

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the challenged ground for termination was proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated the relevant conduct provision of section 161.001(1) and that the termination of the parent-child relationship would be in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder

2

could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

### III. TERMINATION OF RIGHTS UNDER SUBSECTION 161.001(1)(O)

In her third issue, Mother argues that the evidence is legally and factually insufficient to support the trial court's order terminating her parental rights to A.D. under Texas Family Code subsection 161.001(1)(O). We disagree.

Subsection O authorizes termination if the trial court finds, by clear and convincing evidence, that a parent has

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

Tex. Fam. Code Ann. § 161.001(1)(O). Thus, under subsection (O), the Department must prove that (1) the Department has been the child's temporary or permanent managing conservator for at least nine months; (2) the Department took custody of the child as a result of a removal from the parent for abuse or neglect; (3) a court issued an order establishing the actions necessary for the parent to obtain the return of the child; and (4) the parent did not comply with the court order.

Here, Mother does not dispute the existence of evidence sufficient to support findings for elements 1 or 3. Mother does, however, dispute that there was sufficient evidence to support the necessary finding that the Department

3

took custody of A.D. as a result of an emergency removal for child abuse or neglect under Texas Family Code chapter 262 and that she did not comply with the court order establishing actions necessary for her to obtain the return of A.D.

## A. The Department Took Custody of A.D. as the Result of an Emergency Removal for Child Abuse or Neglect

It is the Department's burden to show, under subsection O, that the child was removed for abuse or neglect. *See In re E.C.R.*, 402 S.W.3d 239, 246 (Tex. 2013) (holding that "subsection O requires proof of abuse or neglect"). According to the Supreme Court of Texas, we are to interpret the words "abuse" and "neglect" broadly to necessarily include the risks or threats of the environment in which the child is placed. *Id.* at 248. And we disagree with Mother's assertion that the record in this case is insufficient to support the trial court's finding that A.D. was removed from Mother's custody because of abuse or neglect.[2]

In *E.C.R.*, the supreme court considered whether there was sufficient evidence to support the trial court's finding that the children involved had been removed because of abuse or neglect. *Id.* In so doing, the court considered an affidavit that the Department had filed in support of its petition in which the affiant noted allegations that the child's sibling had been physically abused by the parent. *Id.* The supreme court noted that "[t]his affidavit, even if not evidence for all purposes, shows what the trial court relied on in determining whether removal

---

[2]In her brief, Mother cites cases that the supreme court specifically abrogated in *E.C.R.* 402 S.W.3d at 248. Thus, Mother's reliance on these cases is misplaced.

4

was justified." *Id.* At the follow-up hearing, the trial court later found "sufficient evidence to satisfy a person of ordinary prudence and caution that [the child] faced an immediate danger to his physical health or safety, that the urgent need to protect him required his immediate removal, and that he faced a substantial risk of a continuing danger if he were returned home." *Id.* The supreme court held that (1) the affidavit and (2) subsequent finding by the trial court authorizing the child's removal were sufficient evidence to establish, as a matter of law, that the child had been removed under chapter 262 for abuse or neglect. *Id.* at 249.

Here, the Department's original petition for protection, conservatorship, and termination of parental rights regarding A.D., filed on February 15, 2013, was accompanied by an affidavit in support filed by the Department's Gretchen Starling in which Starling averred that in a prior Department case, A.D. had been temporarily removed from Mother's custody because of her "ongoing methamphetamine use." The court appointed Father temporary custody. Starling stated that during that case, Mother had been under the influence of methamphetamine in A.D.'s presence, but due to a positive test for methamphetamine use by Father, the trial court returned A.D. to Mother's custody.

With regard to the current case, Starling averred that on December 25, 2012, Mother picked A.D. up from A.D.'s paternal grandparents' house and appeared to be under the influence of methamphetamine. Mother was also accompanied by two men "believed to possibly be local drug dealers."

5

Afterwards, Mother disappeared for two days with A.D. in Grandmother's car.[3] According to Starling's affidavit, on December 28, 2012, Hood County officials arrested Mother for possession of methamphetamine. Starling also averred that during this timeframe, Mother "totaled a vehicle with [A.D.] in it."

On January 21, 2013, Mother was charged with the unauthorized use of a company vehicle. The sheriff's report also indicated that when Mother was charged, she was incarcerated on an unrelated charge. On February 1, 2013, Mother purchased a vehicle and "disappeared" with A.D. until February 6, 2013. Starling stated that Mother is known to "run with local drug users and dealers."

Starling stated that on February 12, 2013, she encountered A.D. at the grandparents' residence. According to Starling, the grandparents were not "able or willing to care for [A.D.] any longer because of their age." Starling averred that Mother was on her way to the residence to retrieve A.D. and that concern over recent reports of Mother being on "a drug binge [for] the past few days," coupled with Starling's belief that Mother was no longer welcome at the grandparents' residence, led Starling to believe that Mother "[would] run" with A.D.

Starling further averred that A.D. suffered from "severe eczema" and that stress and anxiety triggered the irritation of her eczema. Further, Starling stated

---

[3]The record is not clear whether Mother had Grandmother's permission to take the vehicle during this episode, but Starling's affidavit illuminates a recurring scenario where Mother would take someone's vehicle, often without permission, and leave for days, sometimes having A.D. with her and at other times leaving A.D. at the grandparents' residence.

6

that A.D. had previously been taken to the emergency room due to the levels of stress brought on by the "high stress environments" Mother allowed A.D. to remain in. A.D. also scratched herself "to the point of causing sores." Furthermore, despite the Department's intervention of taking A.D. to a dermatologist and having proper medication prescribed for A.D.'s eczema, Mother stated to Starling that A.D. did not need the medication. The grandparents also did not treat A.D. with her medication, nor were they able to locate the medication upon Starling's request.

Starling's affidavit also details numerous incidents of Mother's taking other people's vehicles without permission and disappearing for days at a time. Sometimes Mother had A.D. with her; at other times, A.D. remained with the grandparents. Mother's lengthy criminal history—including charges for possession of controlled substances, assault on a public official, credit card abuse, giving false information to authorities, evading arrest, use of prohibited weapons, unauthorized use of a vehicle, and theft of property by check—is also detailed in Starling's affidavit.

Based on this evidence and in accordance with chapter 262 of the Texas Family Code, the Department took emergency custody of A.D. and filed its petition. *See* Tex. Fam. Code Ann. § 262.104. The same day, the trial court issued a protective order allowing A.D. to remain with the Department and scheduling a full advisory hearing for February 20, 2013. After the hearing, the trial court entered orders naming the Department temporary managing

7

conservator of A.D. In its orders, the trial court found that "there is an immediate danger to the physical health or safety of [A.D.] or [A.D.] has been the victim of neglect or sexual abuse and that continuation in the home would be contrary to [A.D.'s] welfare."

The affidavit in support of the Department's petition and the subsequent post-hearing temporary orders entered by the trial court appointing the Department as A.D.'s temporary managing conservator are the type of evidence upon which the supreme court relied in *E.C.R.* in finding the evidence sufficient to support the trial court's finding that the child had been removed for abuse or neglect. *E.C.R.*, 402 S.W.3d at 248. Because a reasonable factfinder could have formed a firm belief or conviction that A.D. was removed from Mother's custody for abuse or neglect, we conclude that the evidence is legally sufficient to support the trial court's finding. *Id.*

Furthermore, Mother points to no contradictory evidence in the record to show that A.D. was removed for a reason other than abuse or neglect. Therefore, after considering the entire record, we conclude that the evidence is factually sufficient for a reasonable factfinder to have formed a firm belief that A.D. was removed from Mother's custody for abuse or neglect. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We overrule this portion of Mother's third issue.

**B. Mother Failed to Comply with the Trial Court's Order Establishing the Actions Necessary for Her to Obtain the Return of A.D.**

In the remainder of her third issue, Mother argues that the evidence is legally and factually insufficient to uphold the trial court's finding that Mother failed to comply with the terms of the order establishing the actions necessary for her to obtain A.D.'s return. Mother specifically argues that the "terms of the order were impossible [for her] to complete." The gist of Mother's argument is that she attempted to comply with numerous conditions of the trial court's orders by pleading guilty to possession of methamphetamine, a plea that resulted in Mother being placed in a substance abuse felony punishment facility (SAFPF). But according to Mother, this placement in SAFPF resulted in making it impossible for her to complete other terms of the trial court's order. Mother does not illuminate what terms she was allegedly prevented from completing by being in SAFPF.

Evidence presented at trial, however, demonstrates that Mother failed to complete the terms of the order by not utilizing programs that were available to her in SAFPF. Dayva McMullen, a case worker for Child Protective Services, testified that the Department had "not received any verification that [Mother had] completed any parenting classes or any of the treatments that are provided to her at the SAFPF program." The terms of the order specified that Mother was to complete "approved parenting classes, and then actively participate in a 12-step program . . . and that was to be done a minimum of four times a week with proof

9

of attendance." Thus, despite Mother's claims that it was impossible for her to satisfy the terms of the court's order, the evidence presented at trial establishes otherwise. *See In re A.H.*, No. 09-13-00395-CV, 2014 WL 1400771, at *4 (Tex. App.—Beaumont, Apr. 10, 2014, no pet.) (mem. op., not designated for publication) (holding that parent's compliance with certain terms of order by placement in SAFPF was not so significant that the trial court could not form firm conviction or belief that parent failed to comply with numerous other terms of order). Because a reasonable factfinder could have formed a firm belief or conviction that Mother failed to comply with the terms of the order establishing the actions necessary for her to obtain A.D.'s return, we conclude that the evidence is legally sufficient to support the trial court's finding. *E.C.R.*, 402 S.W.3d at 249–50.

Furthermore, Mother points to no contradictory evidence in the record to show that she complied with the terms of the order establishing the actions necessary for her to obtain A.D.'s return. Therefore, after considering the entire record, we conclude that the evidence is factually sufficient to support the trial court's finding that Mother failed to comply with the order. *J.F.C.*, 96 S.W.3d at 266. We overrule the remainder of Mother's third issue.

## IV. BEST INTEREST FINDING

In her fifth issue, Mother argues that the evidence was legally and factually insufficient to support the trial court's finding that termination of her parental rights was in A.D.'s best interest.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2014).

We review the entire record to determine the child's best interest. *E.C.R.*, 402 S.W.3d at 250. The same evidence may be probative of both the subsection (1) ground and best interest. *C.H.*, 89 S.W.3d at 28; *see E.C.R.*, 402 S.W.3d at 249. Nonexclusive factors that the trier of fact in a termination case may also use in determining the best interest of the child include:

(A)    the desires of the child;

(B)    the emotional and physical needs of the child now and in the future;

(C)    the emotional and physical danger to the child now and in the future;

(D)    the parental abilities of the individuals seeking custody;

(E)    the programs available to assist these individuals to promote the best interest of the child;

(F)    the plans for the child by these individuals or by the agency seeking custody;

(G)    the stability of the home or proposed placement;

(H)    the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)    any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (citations omitted); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best interest finding, "we

11

consider, among other evidence, the *Holley* factors"); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012).

These factors are not exhaustive; some listed factors may be inapplicable to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

A.D., now six years old, is currently placed with her paternal aunt and uncle. According to McMullen, A.D. has bonded with the aunt and uncle and she is "a different child than when she came into [their] care." On the other hand, McMullen testified that A.D.'s most common reaction to discussions regarding Mother is to "clam up, she [doesn't] want to talk about [Mother]."

Speaking specifically to A.D.'s emotional and physical needs, McMullen testified that since being placed with the aunt and uncle, A.D. has transformed from being "very shy" and not wanting "to talk to anybody" to being "a very outgoing child, she's very, very happy." McMullen stated that A.D. is now "healthy" and that A.D. "no longer has [severe] problems with eczema, and has been put on just using an over-the-counter lotion each day and an over-the-counter cream if something were to flare up." McMullen referred to A.D.'s current placement as "stable." McMullen testified that the Department has no intention of

changing A.D.'s placement with the aunt and uncle, that relative adoption is the Department's goal, and that the aunt and uncle were willing to adopt A.D.

These facts stand in stark contrast to the emotional and physical dangers A.D. experienced while in Mother's custody. Despite being provided proper medication through the Department, Mother did not treat A.D.'s severe eczema, and evidence in the record demonstrates that Mother consistently placed A.D. in "high stress" environments that caused A.D.'s eczema to be irritated. Furthermore, those environments caused A.D. to scratch herself to the point of creating sores, and A.D. had previously been taken to the emergency room due to the levels of stress brought on by Mother's erratic and drug-influenced behaviors. There is evidence in the record that Mother routinely takes other people's vehicles, sometimes without their permission, and disappears for days with A.D. On one such occasion, Mother totaled a vehicle while A.D. was a passenger.

Mother's acts and omissions involve criminal activity ranging from drug possession to theft, frequent methamphetamine use, erratic living conditions, association with drug dealers, and failure to treat A.D.'s medical condition. There is no evidence in the record that suggests any excuse for these acts and omissions.

Because a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights to A.D. was in A.D.'s best

interest, we conclude that the evidence is legally sufficient to support the trial court's finding.  *E.C.R.*, 402 S.W.3d at 249–50.

Furthermore, Mother points to no contradictory evidence in the record to show that termination of her parental rights to A.D. was not in A.D.'s best interest. Therefore, after considering the entire record through the lens of the *Holley* factors, we conclude that the evidence is factually sufficient to support the trial court's finding that terminating Mother's parental rights to A.D. was in A.D.'s best interest.  *J.F.C.*, 96 S.W.3d at 266.  We overrule Mother's fifth issue.

## V. CONCLUSION

Having overruled Mother's third issue, we need not address Mother's first, second, and fourth issues.  *See In re A.V.*, 113 S.W.3d 355, 363 (Tex. 2003); *see also In re E.M.N.*, 221 S.W.3d 815, 821 (Tex. App.—Fort Worth 2007, no pet.). Also having overruled Mother's fifth issue, we affirm the trial court's judgment.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DELIVERED:  July 31, 2014

14